IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EUGENE LAMAR PENDLETON,    )
    )
    Petitioner,    )
    )
    v.    )    Civil Action No. 2:12cv1058-MHT
    )    (WO)
UNITED STATES OF AMERICA,    )
    )
    Respondent.    )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a *pro se* motion by Eugene Lamar Pendleton ("Pendleton") to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

## I. INTRODUCTION

On August 18, 2009, a jury found Pendleton guilty of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count 2); using and carrying firearms during and in relation to, and possession in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3); and possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 4).[1]  On July 16, 2010, the district court sentenced Pendleton to 160 months in prison.

Pendleton appealed, raising the following claims:

1.    The district court abused its discretion in denying his motion to

---

[1] The jury acquitted Pendleton of Count 1 of the indictment, which charged him with aiding and abetting in the possession with intent to distribute powder cocaine.

dismiss the superseding indictment because the grand jury that issued it was exposed to a government witness's false testimony and also reviewed evidence recovered following an unlawful search.

2.   The district court erred in denying his motion to suppress because Detective R.K. Johnson, the affiant officer for the search warrant, made false statements with reckless disregard for the truth, which tainted the rest of the affidavit such that probable cause did not exist to issue the search warrant.

3.   The evidence presented at trial was insufficient to convict him of the charged offenses.

4.   The district court abused its discretion in denying his motion for a new trial because its post-verdict ruling that Detective Johnson acted with reckless disregard for the truth, if known prior to trial, would have resulted in his acquittal on all charges.

Doc. No. 23; *see also* Gov. Ex. R.[2]

On December 2, 2011, the Eleventh Circuit Court of Appeals issued an opinion affirming Pendleton's convictions and sentence.  *United States v. Pendleton*, 447 F. App'x 978 (11th Cir. 2011).  Pendleton did not seek certiorari review in the United States Supreme Court.

On November 29, 2012 (Doc. No. 1), Pendleton filed a motion under 28 U.S.C. § 2255 asserting the following grounds for relief:

1.   He was unlawfully arrested without probable cause.

---

[2] Document numbers ("Doc. No.") are those assigned by the Clerk in the instant civil action or, where indicated, in Pendleton's criminal proceedings, Case No. 2:09cr27-MHT.  All page references are to those assigned by CM/ECF.  References to exhibits ("Gov. Ex.") are to exhibits filed by the government with its response, Doc. No. 23.

2.      Law enforcement unlawfully searched his residence.

3.      Law enforcement relied on an invalid eyewitness identification to obtain a search warrant for his residence.

4.      The search warrant for his residence was secured through the presentation of inaccuracies in Detective Johnson's affidavit.

5.      He was improperly denied a "*Franks* hearing" to address falsehoods in the affidavit for the search warrant for his residence.

6.      Taped telephone conversation between him and Marcus Jenkins were wrongly admitted in violation of Fed. R. Evid. 403.

7.      A member of the jury knew one of the officers who testified at trial, but only revealed this fact to the court at closing argument.

8.      He was incarcerated during the time relevant to Kenny Jenkins's trial testimony and thus was convicted through false testimony by Jenkins.

9.      He was convicted through false evidence created by Detective Johnson.

10.     The evidence was insufficient to convict him of violating 18 U.S.C. § 924(c)(1)(A)(i).

11.     The district court failed to properly instruct the jury on the elements of the § 924(c) offense.

12.     The evidence was insufficient to convict him of violating 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 922(g)(1)

13.     He is actually innocent of the crimes of which he was convicted.

14.     The government failed to disclose exculpatory evidence.

15.     He was convicted through inconsistent testimony.

16.     His counsel rendered ineffective assistance by–

(a)     failing to move to strike telephone conversations between him and Marcus Jenkins, which were admitted in violation of Fed. R. Evid. 403;

(b)     failing to object to testimony by State Parole Officer Stephanie Draw;

(c)     failing to properly examine the juror who knew an officer who testified at trial, and failing to strike that juror for cause;

(d)     failing to produce records showing he was incarcerated during the time relevant to Kenny Jenkins's trial testimony;

(e)     failing to call his wife, Kimberly Holmes, as a trial witness;

(f)     failing to challenge his conviction under 18 U.S.C. § 924(c)(1)(A)(i) based on insufficiency of the evidence;

(g)     failing to request a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), and to file a motion in limine addressing falsehoods in the affidavit for the search warrant for his residence;

(h)     failing to properly question and impeach Detective Johnson at trial;

(i)     failing to move in limine to establish he did not participate in criminal activity with Ponytail and Kenny Jenkins; and

(j)     failing to file a petition for writ of certiorari with the United States Supreme Court.

Doc. No. 1 at 2-42; Doc. No. 3-1 at 4-8.[3]

About March 1, 2013 (Doc. No. 25), Pendleton filed an amendment to his § 2255 motion asserting the following additional claims:

1.    His counsel was ineffective for failing to argue his prior conviction for aggravated assault should not be counted as a crime of violence in classifying him as a career offender.

2.    His counsel was ineffective for failing to call Marcus Jenkins as a trial witness.

3.    His counsel was ineffective for failing to obtain testimony from a firearms expert.

4.    The district court abused its discretion by failing to make "an adverse credibility determination" regarding certain witnesses.

Doc. No. 25 at 44-46.

About June 18, 2013 (Doc. No. 42), Pendleton filed another amendment to his § 2255 motion, this time raising a claim that the detention-search of his person violated the Fourth Amendment because it did not occur in the immediate vicinity of the residence searched as part of the narcotics investigation against him. *Id*. at 1.

After due consideration of Pendleton's § 2255 motion as amended, the submissions supporting and opposing the motion, and the record, the court concludes that an evidentiary hearing is not required and that, under Rule 8(a), *Rules Governing Section 2255 Proceedings*

---

[3] On December 3, 2012, Pendleton supplemented his motion with a completed Model Form for use with § 2255 motions, in which he set forth grounds for relief in a cursory fashion. *See* Doc. No. 3-1. The claims in Pendleton's pleadings overlap in places, are frequently repetitive, and are not always presented in a clear fashion. For organizational and analytical purposes, the court recasts some of the claims in a more appropriate presentation.

*in the United States District Courts*, the § 2255 motion should be denied.

## II. DISCUSSION

### A.    *General Standard of Review*

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232-33 (11th Cir. 2004) (citations omitted).

### B.   *Substantive Claims*

#### 1.    **Substantive Claims Raised and Resolved on Direct Appeal**

The following substantive claims in Pendleton's § 2255 motion were raised in substantially the same form in his direct appeal, where they were decided adversely to him by the appellate court:

- •      Law enforcement unlawfully searched his residence.  (Doc. No.

1 at 9-12; Doc. No. 3-1 at 5 & 8; Gov. Ex. R (pt.2)[4] at 18-21; *see United States v. Pendleton*, 447 F. App'x 978, 981-94 (11th Cir. 2011).)

- Law enforcement relied on an invalid eyewitness identification to obtain a search warrant for his residence. (Doc. No. 1 at 13; Gov. Ex. R (pt.2) at 7-18; *Pendleton*, 447 F. App'x at 981-94.)

- The search warrant for his residence was secured through the presentation of inaccuracies in Detective Johnson's affidavit. (Doc. No. 1 at 28-29 & 31-36; Gov. Ex. R (pt.2) at 7-18; *Pendleton*, 447 F. App'x at 981-84.)

- The evidence was insufficient to convict him of violating 18 U.S.C. § 924(c)(1)(A)(i). (Doc. No. 1 at 18-22; Doc. No. 3-1 at 7; Gov. Ex. R (pt.2) at 23-24; *Pendleton*, 447 F. App'x at 982-83.)

- The evidence was insufficient to convict him of violating 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 922(g)(1). (Doc. No. 1 at 37-38; Gov. Ex. R (pt.2) at 21-24; *Pendleton*, 447 F. App'x at 982-83.)

"The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *see also United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). If a claim has previously been raised on direct appeal and decided adversely to a petitioner, it cannot be relitigated in a collateral attack under § 2255. *See Nyhuis*, 211 F.3d at 1343. Furthermore, "[a] rejected claim does not merit rehearing on a different, but previously available, legal theory." *Id*.

---

[4] Gov. Ex. R (pt.2) contains the Argument portion of the Opening Brief of Appellant filed by Pendleton's counsel on appeal (attached to the government's response to the § 2255 motion). The referenced page numbers are assigned by CM/ECF.

In *United States v. Pendleton*, 447 F. App'x 978 (11th Cir. 2011), the Eleventh Circuit decided the issues listed above adversely to Pendleton. Because these claims were raised and resolved in Pendleton's direct appeal, this court will not reconsider the claims here. *Nyhuis*, 211 F.3d at 1343.

### 2.    Substantive Claims Not Raised on Direct Appeal

Pendleton's § 2255 motion includes the following substantive claims not raised on direct appeal:

- He was unlawfully arrested without probable cause. (Doc. No. 1 at 2-8; Doc. No. 3-1 at 5 & 8.)

- The detention-search of his person violated the Fourth Amendment because it did not occur in the immediate vicinity of the residence searched as part of the narcotics investigation against him. (Doc. No. 42 at 1-2.)

- The district court failed to properly instruct the jury on the elements of the § 924(c) offense. (Doc. No. 1 at 22.)

- He was convicted through false evidence. (Doc. No. 1 at 28-29 & 31-36.)

- The government failed to disclose exculpatory evidence. (Doc. No. 1 at 30.)

- He was convicted through inconsistent testimony. (Doc. No. 1 at 39-40; Doc. No. 3-1 at 4.)

- The district court abused its discretion by failing to make "an adverse credibility determination" regarding certain witnesses. (Doc. No. 25 at 45.)

- He is actually innocent of the crimes of which he was convicted. (Doc. No. 1 at 15.)

8

- Telephone conversations between him and Marcus Jenkins were wrongly admitted at trial in violation of Fed. R. Evid. 403. (Doc. No. 1 at 14.)

- A member of the jury knew one of the officers who testified at trial, but only revealed this fact to the court at closing argument. (Doc. No. 1 at 17.)

- He was incarcerated during the time relevant to Kenny Jenkins's trial testimony and thus was convicted through false testimony by Jenkins. (Doc. No. 1 at 28-29.)

- He was improperly denied a *Franks* hearing to address falsehoods in the affidavit for the search warrant for his residence. (Doc. No. 1 at 23-27.)

Ordinarily, if an available claim is not advanced on direct appeal, it is procedurally barred in a § 2255 proceeding. *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989). "A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). "Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Lynn*, 365 F.3d at 1234-35 (quoting *Mills*, 36 F.3d at 1055).

Pendleton cursorily asserts the ineffective assistance of appellate counsel as "cause"

for his failure to raise the above-listed claims on direct appeal. *See* Doc. No. 27 at 4-5. Ineffective assistance of counsel may satisfy the cause exception to a procedural bar if the claim of ineffective assistance is meritorious. *Greene*, 880 F.2d at 1305. The court will therefore consider these substantive claims in the context of Pendleton's allegations of ineffective assistance of counsel, all of which are discussed below in Part II.C. of this Recommendation.[5]

As noted above, Pendleton asserts he is actually innocent of the crimes of which he was convicted, which, besides being presented as a substantive claim, is also presented as a basis for having his otherwise defaulted claims reviewed in this proceeding. Doc. No. 1 at 15. In *Schlup v. Delo*, 513 U.S. 298 (1995), the United States Supreme Court held that prisoners asserting actual innocence as a gateway to review of defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." 513 U.S. at 327. "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). A petitioner must show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).

As the Supreme Court in *Schlup* observed:

[A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare . . . . To be credible, such a claim requires

---

[5] The last four of Pendleton's substantive claims listed above also underlie separate claims of ineffective assistance of counsel raised in his motion and are considered below in the context of ineffective assistance of counsel.

petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

Here, Pendleton points to no new, reliable exculpatory evidence that, if presented at trial, would have made it more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  He thus fails to satisfy the *Schlup* standard for actual innocence.  *See* 513 U.S. at 324-28.

## C.   *Claims of Ineffective Assistance of Counsel*

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000).

Scrutiny of counsel's performance is highly deferential, and the court indulges a strong presumption that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314.  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*.  (internal quotation marks and brackets omitted).  "Given the

11

strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) (citing *Strickland*, 466 at 687).

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of

appellate counsel may be shown if the movant can "establish . . . that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker . . . . Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). The Supreme Court has held a criminal defendant's appellate counsel is not required to raise all nonfrivolous issues on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). In so holding, the Court noted, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. at 751-52. Therefore, it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel did present other strong issues. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000).

### 1.    Failure to Move to Strike Telephone Conversations

Pendleton contends his trial counsel rendered ineffective assistance by failing to move to strike taped telephone conversations of Pendleton and Marcus Jenkins allegedly discussing drug transactions. Doc. No. 1 at 14. He says admission of the conversations violated Fed. R. Evid. 403 because their probative value was outweighed by the danger of unfair prejudice. *Id*.

Attorney Susan G. James, who was Pendleton's counsel at trial and on appeal, states in an affidavit addressing this claim that she did not move to strike the phone conversations

"because there was no legal basis to support an objection, particularly in view of the Government's burden of proof and in the relevance of the testimony necessary to support the charges." Doc. No. 19-1 at 2.  James further notes that Pendleton suffered no prejudice from admission of the phone conversations because the jury acquitted him of the charge involving Marcus Jenkins.  *Id.*  Pendleton presents no argument establishing that the phone conversations were inadmissible, or that he was prejudiced by their admission. Consequently, he is not entitled to relief based on this claim of ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 687 & 692 (must show deficient performance by counsel and that deficiencies in performance prejudiced the defense to prevail on claim of ineffective assistance).

### 2.    Failure to Object to Testimony of Stephanie Draw

Pendleton also contends James was ineffective for failing to object to testimony by his state parole officer, Stephanie Draw.  Doc. No. 1 at 14.  Draw testified regarding Pendleton's parolee supervision report on which Pendleton had identified his address as the residence where police later seized drug and guns.  *See* Case No. 2:09cr27-MHT, Doc. No. 213 at 202-05.  She testified that she recognized Pendleton's signature on the supervision report.  *Id.* at 202-03.  Pendleton seems to argue that Draw's testimony should have been excluded because she is not qualified as a handwriting expert.  Doc. No. 1 at 14.

Addressing this claim, James states she did not object to Draw's testimony because it was relevant and admissible.  Doc. No. 19-1 at 2.  Pendleton does not deny that he filled

14

in the supervision report or that he listed his address on the report as the residence where the drugs and guns were later found. When testifying that she recognized Pendleton's signature on the report, Draw stated that she had seen his signature several times before. Case No. 2:09cr27-MHT, Doc. No. 213 at 202-03. A signature may be identified by testimony of a person familiar with the signature. *United States v. Barker*, 735 F.2d 1280, 1283 (11th Cir. 1984) (citing Fed. R. Evid. 701 & 901(b)(2)). Pendleton has not shown Draw's testimony was inadmissible and consequently fails to show James was ineffective for failing to object to such testimony. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing argue meritless issue). He is not entitled to relief based on this claim.

### 3.      Failure to Examine and Strike Juror

Pendleton contends James rendered ineffective assistance of counsel when she failed to properly question and move to strike for cause a juror who, according to Pendleton, informed the court during trial that he knew and attended church with a police detective who testified for the government. Doc. No. 1 at 17.

In making this claim, Pendleton appears to conflate two jury members. On the first day of trial, the district court received a message indicating that juror "T.T." had informed a security officer that he recognized a man sitting behind the prosecutor's table, who was an agent of the government, as an individual he may have attended church with at one time and that he believed the man's last name was Edwards. Case No. 2:09cr27-MHT, Doc. No. 213 at 165-166. The court then questioned T.T. and Agent Edwards outside the presence of other

jurors and confirmed that the two men had formerly attended the same church.  *Id*. at 166.

When questioned by the court, T.T. averred that he did not know Edwards personally, that

he could put his knowledge about Edwards out of his mind in resolving the case, and that he

could be fair and impartial.  *Id*.  T.T. remained on the jury.  (Contrary to Pendleton's claim

in his § 2255 motion, Edwards did not testify at trial.)

Shortly before the government completed its case-in-chief, the court received a note

indicating that juror "R.R." had informed a security officer that he "may know" the previous

witness for the government, Danny Guthrie, who testified regarding a Montgomery residence

he had leased to an individual called "Ponytail."  Case No. 2:09cr27-MHT, Doc. No. 215 at

75.  Guthrie, who stated he owned several low-income rental properties, testified that

Pendleton, whom Pontytail called his "boss," paid the utility bills for the residence.  *Id*. at 59-

62.  After receiving the juror note, the court questioned R.R. outside the presence of other

jurors.  R.R. told the court he thought he might recognize Guthrie as an individual present

on one occasion when his neighbor had asked him to come look at a tree on his property.  *Id*.

at 76.  He stated he wasn't positive Guthrie was the person, but that he "may be the

gentleman."  *Id.*  The court then asked R.R. if he concluded Guthrie was in fact the man,

could he "put that out of your head and decide this case based solely on the evidence that's

been presented."  *Id*.  R.R. answered affirmatively.  *Id*.  He remained on the jury.

Examination of jurors T.T. and R.R. by James beyond the questions posed by the

district court would have achieved little.  The court's questioning established the limited

nature of T.T.'s acquaintanceship with Edwards and of R.R.'s with Guthrie.  The court determined to its satisfaction that T.T.'s and R.R.'s deliberations would not be influenced by the acquaintanceships.  Pendleton's claim notwithstanding, there were no grounds for James to move to strike T.T. or R.R. for cause.  Pendleton fails to demonstrate deficient performance by James or resulting prejudice.  *Strickland*, 466 U.S. at 687 & 692.  Consequently, he is not entitled to any relief based on this claim.

### 4.     Failure to Demonstrate Pendleton's Incarceration During Time Relevant to Kenny Jenkins's Testimony

Pendleton claims James rendered ineffective assistance of counsel by failing to produce records showing he was incarcerated in state prison during the time relevant to Kenny Jenkins's trial testimony.  Doc. No. 1 at 28-29.

Jenkins's trial testimony went to Count 1 of the indictment, which charged Pendleton with aiding and abetting in the possession with intent to distribute powder cocaine in February 2008.  Gov. Ex. D at 1; *see* Case No. 2:09cr27-MHT, Doc. No. 213 at 31-139.  The jury acquitted Pendleton of that count.  The conduct about which Jenkins testified was separate and distinct from the conduct for which Pendleton was convicted, which concerned events alleged to have taken place around December 2008.  *See* Gov. Ex. D at 1-3.

Addressing Pendleton's claim that she was ineffective, James states she believed it would have been harmful to Pendleton's case if the jury knew he was previously in prison on drug charges.  Doc. No. 19-1 at 3.  In addition, she states Pendleton's claim is moot because the jury acquitted him of the conduct about which Jenkins testified.  *Id*.  In his

17

§ 2255 motion, Pendleton does not point to evidence establishing he was incarcerated at all times relevant to Jenkins's testimony.

The trial record reflects James vigorously cross-examined Jenkins, impeached him with inconsistencies in his testimony, and argued to the jury that his testimony against Pendleton was not credible and was in exchange for prosecutorial leniency in his own criminal cases. *See* Case No. 2:09cr27-MHT, Doc. No. 213 at, e.g., 24-27, 74-122, 136-139. Pendleton fails to demonstrate James performed deficiently in this regard or that he was prejudiced by James's performance. Therefore, he is not entitled to relief based on this claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687 & 692.

### 5.       Failure to Call Kimberly Holmes as Witness

Pendleton contends James rendered ineffective assistance of counsel by failing to call his wife, Kimberly Holmes, as a trial witness. Doc. No. 1 at 16. According to Pendleton, Holmes would have testified that the guns and marijuana found in a search of his residence were "left by a boyfriend of hers named Lee." *Id*.

Pendleton submits an affidavit from Holmes in which she states that she was married to but separated from Pendleton when the residence was searched; that Pendleton was not living at the residence when the search was conducted; that she never allowed anyone to use, package, or distribute drugs at the residence; that she was "dating several men non sexually during this sequence"; that she did not know who possessed the marijuana found at the residence; and that prior to trial she told James she "got the guns to protect myself and the

18

kids because someone was shooting in front of the house."[6]  Doc. No. 30-1 at 1-2.  Holmes
maintains she asked James if she wanted her to testify and James told her it was "in my best
interest to stay away from the trial."  *Id*. at 2.

In an affidavit submitted prior to Holmes's, James avers that Holmes did not even
want to be a spectator at trial "for fear she would be implicated in some way with the
contraband found in the residence"; that Holmes "never expressed any interest in being a
witness or telling counsel the contraband belonged to her boyfriend"; and that she was
unaware until Pendleton filed his § 2255 motion that Holmes had a boyfriend.  Doc. No 19-1
at 2-3.

In a second affidavit, specifically addressing the statements in Holmes's affidavit,
James states in pertinent part:

> Specifically, counsel denies that Kimberly Holmes Pendleton ever indicated
> a desire to testify on behalf of Eugene Pendleton.  Counsel maintains the
> position previously stated in her original affidavit.
>
> Counsel never gave Kimberly Holmes Pendleton legal advice or tell her
> it was in her best interest not to testify or attend the trial.  To the contrary Ms.
> Holmes said she wanted no part in the trial.  She further indicated she did not
> want to participate or make herself available out of concern she might be
> called as a witness in the trial by the Government.
>
> Ms. Holmes never told counsel that she was dating other men at the
> time nor did she offer any excuse for why drugs or guns were located in the
> house.

---

[6] Notwithstanding the assertions by Pendleton in his § 2255 motion, Holmes does not state
in her affidavit that the marijuana found in the residence was left by Lee.  Nor does she specifically
state that the guns she got for self-protection were Lee's.

The sister of Mr. Pendleton was called as a defense witness at trial instead of Kimberly Holmes to testify that Pendleton was not living with Kimberly. The Government used a State Probation Officer to testify that Pendleton had listed [the residence] as his known address on his state monthly probation form. Further, law enforcement testified Pendleton had been observed at the residence. A Government informant, "Ponytail," testified to facts tying Pendleton to [the residence].

Kimberly Holmes may have indicated to counsel that the guns were hers. She was unwilling to testify to that fact because of her concern she might be implicated with the drugs. Further, in counsel's opinion, Pendleton could have still been held accountable as a felon in possession regardless of who owned the guns. Ponytail testified he previously observed Pendleton with at least one of the guns seized from the residence.

If Ms. Holmes had been called as a defense witness to take ownership of the guns, the Government would have clearly questioned her about the drugs and her knowledge of guns. It is clear her knowledge of guns would have been insufficient to establish ownership. Counsel would not have used her as a witness even if she had volunteered to be a witness. She would have denied any knowledge of the drugs and if she gave the excuse she does in her purported affidavit that "I do not know who possessed the marijuana found at my house though I was dating several men non sexually during this sequence[,]" [t]he jury would have disbelieved her on the guns. Further, her denial of possession of the drugs would have left the jury with the conclusion they were Pendleton's.

Counsel made a strategy call on leaving the jury to believe the drugs could have been Ms. Holmes's as we did everything possible to distance Pendleton from the residence at the time of the search.

If Ms. Holmes's affidavit were true, it is curious as to why she did not make such a claim after she was not called as a witness during Pendleton's first trial [which ended in a mistrial]. Further, Pendleton, himself, never voiced a complaint to counsel or the Court after the mistrial regarding Kimberly Holmes not being called as a witness in the first trial. Nor did he make any request to counsel or the Court before the second trial that she should be called as a material witness.

Doc. No. 35 at 1-3.

Strategic choices of counsel made after thorough investigation of the law and facts relevant to plausible options are "virtually unchallengeable." *Strickland*, 466 U.S. at 690. "Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). *See also, e.g.,* *Dingle v. Sec'y for Dep't of Corrs.*, 480 F.3d 1092, 1099 (11th Cir. 2007).

> [A] court must not second-guess counsel's strategy. *Waters [v. Thomas]*, 46 F.3d [1506,] at 1518-19 [(11th Cir. 1995)] (en banc). By "strategy," we mean no more than this concept: trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client. For example, calling some witnesses and not others is "the epitome of a strategic decision." *Id*. at 1512 (en banc); *see also id.* at 1518-19 (en banc); *Felker v. Thomas*, 52 F.3d 907, 912 (11th Cir. 1995) (whether to pursue residual doubt or another defense is strategy left to counsel, which court must not second-guess); *Stanley v. Zant*, 697 F.2d 955, 964 (11th Cir. 1983) (stating that reliance on line of defense to exclusion of others is matter of strategy).

*Chandler*, 218 F.3d at 1314 n.14.

Here, the decision by James not to present testimony from Holmes falls within the wide range of reasonable professional assistance. It was not unreasonable for James to believe that testimony from Holmes disclaiming knowledge of the drugs found in the residence could lead jurors to speculate the drugs were Pendleton's and that (especially in light of evidence linking Pendleton to the residence) jurors might find Holmes's testimony generally incredible, so that if she were to claim ownership of the guns, jurors would discount such a claim. Pendleton could still be held accountable for the guns even if Holmes

claimed ownership.  James made a strategy choice to leave the jury to believe the drugs could have been Holmes's and to attempt, through other witnesses, to distance Pendleton from the residence when it was searched.  This strategy choice was not "so patently unreasonable" that no competent lawyer would have chosen it.  *Adams*, 709 F.2d at 1145.  Consequently, Pendleton is not entitled to relief based on this claim of ineffective assistance of counsel.

### 6.  Failure to Challenge Sufficiency of Evidence Regarding § 924(c) Count

Pendleton claims James was ineffective for failing to challenge his conviction under 18 U.S.C. § 924(c)(1)(A)(i) based on the alleged insufficiency of the evidence.  *See* Doc. No. 1 at 18-22.  This claim is factually incorrect.  James moved for a judgment of acquittal, alleging insufficiency of the evidence on all counts, after the government rested its case.  Case No. 2:09cr27-MHT, Doc. No. 215 at 72-74.  She renewed the motion for judgment of acquittal on all counts after the defense rested.  *Id*. at 129-30.  In a post-trial motion filed on September 8, 2009, James again moved for acquittal on the counts of conviction, alleging insufficient evidence.  Gov. Ex. O at 3-10.  And on appeal, James pursued the argument that the evidence was insufficient to support the counts of conviction.  *Pendleton*, 447 F. App'x 978 (11th Cir. 2011).  The Eleventh Circuit held there was sufficient evidence to sustain each conviction.  *Id*. at 982-83.  Pendleton is not entitled to relief based on this meritless claim of ineffective assistance of counsel.

7.     **Failure to Request *Franks* Hearing**[7]

Pendleton claims James rendered ineffective assistance by failing to request a hearing

under *Franks v. Delaware*, 438 U.S. 154 (1978), and to file a motion in limine addressing

falsehoods in the affidavit for the search warrant for his residence.  Doc. No. 1 at 23-27.

Again, Pendleton presents a claim contradicted by the record.  James filed a pretrial

motion to suppress (later supplemented) in which, citing *Franks*, she argued Detective R.K.

Johnson (of the Montgomery Police Department), the affiant officer for the search warrant,

made false statements with reckless disregard for the truth, which tainted the rest of the

affidavit so that probable cause did not exist to issue the search warrant.  *See* Exs. E & G.

James pursued this claim vigorously in several pretrial motions and hearings held on the

suppression issue.  *See* Case No. 2:09cr27-MHT, e.g., Doc. Nos. 100, 107, 114, 131, 139,

145, 196, 210, 211.  The district court ultimately agreed with James that Detective Johnson's

affidavit contained reckless falsehoods, but following *Franks*, excised the tainted information

and concluded that, even without the falsehoods, probable cause remained to search the

residence.  *See United States v. Pendleton*, 721 F. Supp. 2d 1192 (M.D. Ala. 2010).  James

also pursued this issue in Pendleton's appeal.  *See Pendleton*, 447 F. App'x 978.  Pendleton

does not state how a motion in limine would have added anything to James's already

thorough litigation.  His failure to demonstrate that James performed deficiently in this

_____

[7] A "*Franks* hearing" is an evidentiary hearing held to determine the veracity of statements made in an affidavit for a search warrant.  *Franks v. Delaware*, 438 U.S. 154 (1978).  *See, e.g., United States v. Lee*, 548 F. App'x 585, 586 (11th Cir. 2013).

regard or that he was prejudiced by James's performance precludes his receiving any relief on this claim of ineffective assistance.  *Strickland*, 466 U.S. at 687 & 692.

### 8. Failure to Properly Question and Impeach Detective Johnson

Pendleton contends James was ineffective for failing to "react" to Detective Johnson's trial testimony (on direct examination) that he "saw very little activity" at Pendleton's residence while conducting a surveillance,[8] because this statement by the detective implied to the jury that there must have been previous drug activity at the residence.  Doc. No. 1 at 33.  James  explains she did not object because the statement by Detective Johnson (that he saw very little activity at the residence) was more helpful than harmful to Pendleton's defense.  Doc. No. 19-1 at 3.  Pendleton fails to demonstrate deficient performance by James or resulting prejudice.  *Strickland*, 466 U.S. at 687 & 692.

Pendleton also maintains James was ineffective for failure to impeach Detective Johnson's testimony during cross-examination at trial.  Doc. No. 1 at 33.  However, James conducted a thorough cross-examination of Detective Johnson, focusing attention on mistakes and misidentifications the detective made in the course of investigating Pendleton and on discrepancies in his testimony.  Case No. 2:09cr27-MHT, Doc. No. 214 at 105-138 & 143-144.  James also called Detective Johnson to the stand during the defense's case and briefly questioned him to same effect as some of her cross-examination.  *Id*., Doc. No. 215

---

[8] *See* Case No. 2:09cr27-MHT, Doc. No. 214 at 72.

at 117-120.   Pendleton does not say how James could have cross-examined Detective Johnson differently to have changed the outcome of his trial.   He fails to demonstrate the deficient performance of counsel and the resulting prejudice necessary to sustain a claim of ineffective assistance.   He is not entitled to relief on this claim.

### 9.   Failure to Move in Limine to Establish Pendleton Did Not Participate in Criminal Activity with Ponytail and Kenny Jenkins

Pendleton maintains James was ineffective for failing to move in limine to establish he did not take part in cocaine distribution with Ponytail and Kenny Jenkins in February 2008, because, he says, Ponytail testified he first met Pendleton in June 2008.[9]  Doc. No. 1 at 41.  As James observes in her affidavit, Pendleton can show no prejudice here because the jury acquitted him of the alleged cocaine distribution.   Doc. No. 19-1 at 4.   Pendleton fails to demonstrate James performed deficiently in this regard or that he was prejudiced by James's performance.   Therefore, he is not entitled to relief based on this claim.

### 10.   Failure to Challenge Treatment of Aggravated Assault Conviction as Crime of Violence for Purposes of Career Offender Classification

Pendleton contends James rendered ineffective assistance of counsel at sentencing by failing to argue his prior conviction for "aggravated assault" should not be counted as a crime of violence in classifying him as a career offender. Doc. No. 25 at 44.

Pendleton was classified as a career offender under U.S.S.G. § 4B1.1 based on his

---

[9] Pendleton does not point to Ponytail's specific testimony that he first met Pendleton in June 2008.

25

prior Alabama felony convictions for (1) distribution of cocaine and (2) first-degree assault.[10]

The presentence investigation report ("PSI") in Pendleton's case set forth the following facts

concerning his conviction for first-degree assault:

> Court records reflect that the defendant was originally charged with Attempted
> Murder, but was found guilty by a jury of the charge of Assault in the First
> Degree.  The case stemmed from Pendleton attempting to murder Derrick
> Simmons by shooting him with a handgun.

PSI at 9, ¶ 44.

It is clear from the PSI that Pendleton was *not* convicted of "DUI assault" (requiring

only a recklessness mens rea) under Alabama's first-degree assault statute and was convicted

of an assault carried out with a firearm.  *See* § 13-6-20(a)(1)-(5), Ala. Code 1975.  Therefore,

his first-degree assault conviction was properly deemed a crime of violence for purposes of

the career offender guideline.  *See Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328,

1338 n.6 (11th Cir. 2013) ("The PSR leaves no doubt that Turner was convicted of an assault

carried out with a firearm – a deadly weapon – and we have held that assault with a deadly

---

[10] In order to be a career offender under U.S.S.G. § 4B1.1, a defendant must have been at least eighteen years old at the time he committed the instant offense of conviction, the instant offense of conviction must be either a crime of violence or a controlled substance offense, and the defendant must have had at least two prior felony convictions of either a crime of violence or a controlled substance offense.  *See* U.S.S.G. § 4B1.1(a).  Under the Sentencing Guidelines, a "crime of violence" is defined as a felony under federal or state law that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a).  U.S.S.G. § 4B1.1(b) directs that, except as provided in subsection (c), if the offense level of the career offender from the table in the subsection is greater than the otherwise applicable offense level, the offense level from the table in the subsection shall apply.  Pursuant to U.S.S.G. § 4B1.1(b), a career offender's criminal history category in every case is VI.

weapon is included in 'the generic crime of "aggravated assault" so as to qualify as a "crime of violence"' or a violent felony for purposes of sentencing.  *See United States v. Palomino Garcia*, 606 F.3d 1317, 1331-32 (11th Cir. 2010); *see also United States v. Lockley*, 632 F.3d 1238, 1243 n.5 (11th Cir. 2011) ('Though ACCA's "violent felony" enhancement and the Guidelines' career offender enhancement differ slightly in their wording, we apply the same analysis to both.')").   Consequently, there were no grounds for James to argue that Pendleton's Alabama conviction for first-degree assault was not a qualifying crime of violence, and an argument on this ground would have been rejected as lacking merit.[11]  Pendleton demonstrates neither deficient performance nor prejudice.  *Strickland*, 466 U.S. at 687 & 692.  Consequently, he is not entitled to relief based on this claim.

### 11.  Failure to Call Marcus Jenkins as Witness

Pendleton contends James was ineffective for failing to call Marcus Jenkins as a trial witness to establish Jenkins had never met "Ponytail."  Doc. No. 25 at 44-45.  He says Marcus Jenkins's testimony would have discredited Ponytial, so that the jury would have rejected testimony implicating Pendleton in the drug trade.[12]  *Id*.

James addresses this claim as follows:

---

[11] As James notes in an affidavit filed with the court, she did object generally to Pendleton's being classified as a career offender based on the severity of the sentence it yielded.  Doc. No. 35 at 4; *see* Case No. 2:09cr27-MHT, Doc. No. 258 at 13, 55-56.  Further, James was successful in convincing the district court to grant a substantial downward variance in Pendleton's sentence, ameliorating the effect of the career offender classification.

[12] Marcus Jenkins is the nephew of cooperating government witness Kenneth Jenkins.

As relates to Pendleton's claim that counsel was ineffective for failing to argue his inability to cross-examine Marcus Jenkins, counsel made a strategy call not to call Marcus Jenkins as a defense witness as he was cooperating with the Government. Based on DEA 6 interviews, he would have clearly inculpated Pendleton. This, of course, is a moot point as Pendleton was acquitted on the charged cocaine conspiracy that Marcus Jenkins was alleged to have been part of. The Government did not call Marcus Jenkins at trial.

Doc. No. 35 at 3.

James's strategy decision not to call Marcus Jenkins to testify falls within the wide range of reasonable professional assistance. It was not unreasonable for her to believe testimony from Jenkins would harm Pendleton's defense and therefore to opt to avoid exposing her client to testimony from a witness cooperating with the government. "[C]alling some witnesses and not others is the epitome of a strategic decision." *Chandler*, 218 F.3d at 1314 n.14 (citation omitted). Pendleton demonstrates neither deficient performance by James nor resulting prejudice. Therefore, he is not entitled to relief based on this claim.

### 12.   Failure to Obtain Testimony from Firearms Expert

Pendleton contends James rendered ineffective assistance of counsel for failing to obtain testimony from a firearms expert, who he says might have offered testimony regarding the proper procedure to identify the registered owner of the firearms underlying his convictions on Counts 3 and 4. Doc. No. 25 at 45. James responds that it was unnecessary to obtain a firearms expert for this purpose because she was able to establish to the jury that the guns in question were registered to persons other than Pendleton or his wife. Doc. No. 35 at 3-4; *see, e.g.,* Case No. 2:09cr27-MHT, Doc. No. 214 at 38-39, 43-44. As the

government observes, Pendleton's claim here "seeks to establish facts that were known at trial, but had no bearing on his constructive possession of the firearms." Doc. No. 39 at 11. Pendleton fails to demonstrate deficient performance by James or resulting prejudice. He is not entitled to relief based on this claim.

### 13.    Failure to Challenge Arrest and Detention-Search on Appeal

Pendleton contends James rendered ineffective assistance of appellate counsel when she did not argue on appeal that he was unlawfully arrested without probable cause and that the detention-search of his person violated the Fourth Amendment. *See* Doc. No. 1 at 2-8; Doc. No. 3-1 at 5 & 8; Doc. No. 27 at 4-5; Doc. No. 42- at 1-2. James's pretrial suppression motion challenged, among other things, the arrest and search that Pendleton refers to in this claim. *See* Gov. Ex. E at 6-8. Pendleton prevailed on this portion of the motion, and the court suppressed the cash seized from him during the detention. *See* Case No. 2:09cr27-MHT, Doc. No. 107 at 13-14; *Pendleton*, 721 F. Supp. 2d at 1194. Because Pendleton prevailed on this claim in the district court, there was no reason for James to pursue it on appeal. Pendleton fails to demonstrate deficient performance or resulting prejudice and therefore is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 14.    Failure to Appeal Jury Instructions on § 924(c) Offense

Pendleton claims the district court failed to properly instruct the jury on the elements of the 18 U.S.C. § 924(c) offense of which he was convicted. Doc. No. 1 at 22. He then

seeks to salvage this otherwise defaulted claim by asserting James was ineffective for failing to present it on appeal.  *See* Doc. No. 27 at 4-5.  However, there was no basis for James to raise such a claim on appeal, as there was no error in the district court's jury instructions on the § 924(c) charge, and Pendleton can point to none.  *See* Case No. 2:09cr27-MHT, Doc. No. 215 at 182-184, 186-187.  Counsel cannot be ineffective for failing to argue a meritless issue.  *Chandler*, 240 F.3d at 917.  Pendleton is not entitled to relief based on this claim.

### 15.    Failure to Raise Claims on Appeal Regarding Witness Credibility

Pendleton raises several thematically related claims challenging witness credibility. In this regard, he asserts that (1) he was convicted through use of false evidence created by Detective Johnson (Doc. No. 1 at 28-29 & 31-36); (2) he was convicted through use of inconsistent testimony by Detective Johnson, Kenny Jenkins, and "Ponytail" (Doc. No. 1 at 28-29 & 39-40; Doc. No. 3-1 at 4); (3) the government failed to disclose exculpatory evidence (Doc. No. 1 at 30);[13] and (4) the district court abused its discretion by failing to make "an adverse credibility determination" regarding certain witnesses (Doc. No. 25 at 45). He then suggests these otherwise procedurally defaulted substantive claims are subject to review on grounds that his attorney James was ineffective for failing to present them on

---

[13] This court recognizes that Pendleton's claim regarding the government's alleged failure to disclose exculpatory evidence is presented as an alleged violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  Doc. No 1 at 30.  However, underlying his claim are allegations that certain government witnesses testified falsely and/or inconsistently.  In any event, Pendleton fails to demonstrate a *Brady* violation by the government, as the matters he points to in making this claim were not "suppressed" by the government, were known to the defense, and in fact were the bases of arguments presented by James in pretrial motions and at trial.

appeal.  *See* Doc. No. 27 at 4-5.  However, James did forcefully challenge the credibility of the government's witnesses at trial and was able to score points by highlighting inconsistencies in their testimony, their motives for cooperating with prosecutors, and in the case of Detective Johnson the mistakes made in the course of investigating Pendleton.  The jury, however, found Pendleton guilty of the conduct charged in Counts 2 through 4.  On appeal, James presented arguments that the evidence was insufficient to support the counts of conviction.  *Pendleton*, 447 F. App'x 978 (11th Cir. 2011).  The Eleventh Circuit held there was sufficient evidence to sustain each conviction.  *Id*. at 982-83.  In so holding, the Eleventh Circuit found "Pendleton did not demonstrate that the testimony of any of [the government's] witnesses was legally incredible."  *Id*. at 983.  Under the circumstances, this court concludes Pendleton is unable to establish any prejudice resulting from James's failure to present on appeal the witness-credibility claims he urges in his § 2255 motion, including his claim that the district court abused its discretion by failing to make an adverse credibility determination regarding certain witnesses.  Consequently, Pendleton is not entitled to relief based on this claim of ineffective assistance of appellate counsel.

### 16.    Failure to Seek Certiorari Review

Pendleton contends James rendered ineffective assistance of counsel by failing to file a petition for writ of certiorari with the United States Supreme Court after the Eleventh Circuit affirmed his conviction and sentence.  Doc. No. 1 at 41.  James replies that she was not retained to file a petition for certiorari review or instructed to do so by Pendleton and that

such a petition would have been meritless.  Doc. No 19-1 at 4.

Pendleton does not have a constitutional right to the assistance of counsel in seeking certiorari review before the Supreme Court.  *Ross v. Moffitt*, 417 U.S. 600, 616-17 (1974); *see, e.g., Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009); *Pena v. United States*, 534 F.3d 92, 95-96 (2d Cir. 2008); *United States v. Fernandez*, 397 F. App'x 433, 436 (10th Cir. 2010).  And even if Pendleton did have a constitutional right to the assistance of counsel in seeking certiorari review, his ineffective assistance claim would fail under the second prong of the *Strickland* test because he has not shown prejudice.  Nothing in the arguments Pendleton raised on appeal or raises now suggests that certiorari reviw would have been granted in his case had counsel filed such an application, or that the ultimate outcome of the proceedings would have been different.  Pendleton is not entitled to § 2255 relief on this claim.

## III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Pendleton be DENIED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **February 24, 2015**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District

Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 10th day of February, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE